# Exhibit 1

# 801.00 Policy

801.00Policy

Securities admitted to the list may be suspended from dealings or removed from the list at any time that a company falls below certain quantitative and qualitative continued listing criteria. When a company falls below any criterion, the Exchange will review the appropriateness of continued listing. The Exchange may give consideration to any definitive action that a company would propose to take that would bring it above continued listing standards. The specific procedures and timelines regarding such proposals are delineated in Sections 802.02 and 802.03.

When a company which has fallen below any of the continued listing criteria has more than one class of securities listed, the Exchange will give consideration to delisting all such classes. However, the Exchange may continue the listing of one class of securities regardless of its decision to delist another class. This circumstance would usually occur when a class of listed securities falls below certain of the Exchange's distribution criteria. Any issue convertible into common stock customarily is delisted when the related common stock is delisted, except that a debt security convertible into a listed equity security will be reviewed when the underlying equity security is delisted and will be delisted when the underlying equity security is no longer subject to real-time trade reporting in the United States. In addition, if common stock is delisted for violation of any of the "Corporate Responsibility" criteria in Section 3 of this Listed Company Manual, the Exchange will also delist (i) any listed debt securities convertible into that common stock and (ii) any specialized securities listed pursuant to Section 703 of the Manual the price of which is related to that common stock.

The Exchange will normally not approve the listing of additional shares of common stock of a company that has fallen below any of the Exchange's continued listing criteria in connection with a business combination with an unlisted company which results in the unlisted company acquiring the listed company. This would be the case regardless of which company was nominally the survivor. An exception to the above-stated policy is that the Exchange would normally approve the listing if the company resulting from the combination would meet the Exchange's original listing criteria in all respects.

# 802.01 Continued Listing Criteria

The Exchange would normally give consideration to the prompt initiation of suspension and delisting procedures with respect to a security of either a domestic or non-U.S. issuer when:

802.01A.Distribution Criteria for Capital or Common Stock (including Equity Investment Tracking Stock).—

•Number of total stockholders (A) is less than  _____400

OR

•Number of total stockholders (A) is less than  _____1,200 and

•Average monthly trading volume is less than  _____100,000 shares (for most recent 12 months)

OR

•Number of publicly-held shares (B) is less than  _____600,000(C)

(A) The number of beneficial holders of stock held in the name of Exchange member organizations will be considered in addition to holders of record.

(B) Shares held by directors, officers, or their immediate families and other concentrated holdings of 10% or more are excluded in calculating the number of publicly-held shares.

(C) If the unit of trading is less than 100 shares, the requirement relating to the number of shares publicly held shall be reduced proportionately.

This Section 802.01A is applicable to listed Equity Investment Tracking Stocks.

   **Amended:** June 24, 2016 (NYSE-2016-22).

802.01BNumerical Criteria for Capital or Common Stock (including Equity Investment Tracking Stock)
A company (including the issuer of an Equity Investment Tracking Stock) will be considered to be below compliance if its average global market capitalization over a consecutive 30 trading-day period is less than $50,000,000 and, at the same time stockholders' equity is less than $50,000,000.

If a company is initially listed under any of the Exchange's financial standards on the basis of financial statements covering a period of nine to twelve months and the company does not qualify under the regular standard at the end of such fiscal year or qualify at such time for original listing under another listing standard, the Exchange will promptly initiate suspension and delisting procedures with respect to the Company. Such companies will not be eligible to avail themselves

of the provisions of Sections 802.02 and 802.03 and any such company will be subject to delisting procedures as set forth in Section 804.

Notwithstanding the preceding two paragraphs, the Exchange will promptly initiate suspension and delisting procedures with respect to a company (including the issuer of an Equity Investment Tracking Stock) that is listed under any financial standard set out in Sections 102.01C or 103.01B if a company is determined to have average global market capitalization over a consecutive 30 trading-day period of less than $15,000,000, regardless of the original standard under which it listed. A company is not eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to this criterion.

When applying the market capitalization test in any of the above standards, the Exchange will generally look to the total common stock outstanding (excluding treasury shares) as well as any common stock that would be issued upon conversion of another outstanding equity security. The Exchange deems these securities to be reflected in market value to such an extent that the security is a "substantial equivalent" of common stock. In this regard, the Exchange will only consider securities (1) publicly traded (or quoted), or (2) convertible into a publicly traded (or quoted) security. For partnerships, the Exchange will analyze the creation of the current capital structure to determine whether it is appropriate to include other publicly-traded securities in the calculation.

In the case of an Equity Investment Tracking Stock, the Exchange will review the continued listing status of that security if:

- The listed equity security or securities whose value is tracked by the Equity Investment Tracking Stock ceases or cease to be listed on the Exchange.

- The issuer of the Equity Investment Tracking Stock owns (directly or indirectly) less than 50% of either the economic interest or the voting power of all of the outstanding classes of common equity of the issuer whose equity is tracked by the Equity Investment Tracking Stock.

- The Equity Investment Tracking Stock ceases to track the performance of the listed equity security or securities that was tracked at the time of initial listing.

In the event that any of the foregoing conditions exist, the Exchange will determine whether the Equity Investment Tracking Stock meets any other applicable initial listing standard in place at that time. If the Equity Investment Tracking Stock does not qualify for initial listing at that time under another applicable listing standard, the issuer will not be eligible to follow the procedures set forth in Sections 802.02 and 802.03 and the Exchange will immediately suspend the Equity Investment Tracking Stock and commence delisting proceedings. Furthermore, whenever trading in

the equity security whose value is tracked by an Equity Investment Tracking Stock is suspended or delisting proceedings are commenced with respect to such security, such Equity Investment Tracking Stock will be suspended and/or delisting proceedings will be commenced with respect to such Equity Investment Tracking Stock at the same time.

## Criteria for REITs and Limited Partnerships

The Exchange will promptly initiate suspension and delisting procedures wtih respect to REITs and Limited Partnerships if the average market capitalization of the entity over 30 consecutive trading days is below $15,000,000. The Exchange will promptly initiate suspension and delisting procedures with respect to a REIT if it fails to maintain its REIT status (unless the resultant entity qualifies for an original listing as a corporation).

The Exchange will notify the REIT or limited partnership if the average market capitalization falls below $35,000,000 and will advise the REIT or limited partnership of the delisting standard. REITs and limited partnerships are not eligible to follow the procedures outlined in Sections 802.02 and 802.03.

## Criteria for Acquisition Companies ("ACs")

*Prior to Consummation of Business Combination*

Prior to the consummation by a listed Acquisition Company (an "AC") of its Business Combination (as defined in Section 102.06), the Exchange will promptly initiate suspension and delisting procedures:

(i) if the AC's average aggregate global market capitalization is below $50,000,000 or the average aggregate global market capitalization attributable to its publicly-held shares is below $40,000,000, in each case over 30 consecutive trading days. An AC will not be eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to this criterion, and any such AC will be subject to delisting procedures as set forth in Section 804. The Exchange will notify the AC if its average aggregate global market capitalization falls below $75,000,000 or the average aggregate global market capitalization attributable to its publicly-held shares falls below $60,000,000 and will advise the AC of the delisting standard.

* Shares held by directors, officers, or their immediate families and other concentrated holding of 10 percent or more are excluded in calculating the number of publicly-held shares.

(ii) if the AC securities initially listed (either common equity securities or units, as the case may be), fall below the following distribution criteria (the distribution standards set forth in Section

802.01A above are not applied to ACs):

· the number of public stockholders (A)(B) is less than............................................300

OR

· the number of total stockholders (A) is less than...........................................1,200 and average monthly trading volume is less than...........................100,000 shares (for most recent 12 months)

OR

· the number of publicly-held shares (B) is less than..............................600,000(C).

(A) The number of beneficial holders of stock held in the name of Exchange member organizations will be considered in addition to holders of record.

(B) Shares held by directors, officers, or their immediate families and other concentrated holdings of 10% or more are excluded in calculating the number of publicly-held shares. "Public stockholders" exclude holders that are directors, officers, or their immediate families and holders of other concentrated holdings of 10% or more.

(C) If the unit of trading is less than 100 shares, the requirement relating to the number of shares publicly held shall be reduced proportionately.

In the case of AC securities traded as a unit, such securities will be subject to suspension and delisting if any of the component parts do not meet the applicable listing standards. However, if one or more of the components is otherwise qualified for listing, such component(s) may remain listed.

For the purposes of determining whether an individual component satisfies the applicable distribution criteria, the units that are intact and freely separable into their component parts shall be counted toward the total numbers required for continued listing of the component. If a component is a warrant, it will be subject to the continued listing standards for warrants set forth in Section 802.01D, including a distribution requirement of 100 holders.

Notwithstanding the foregoing, the Exchange will consider the suspension of trading in, or removal from listing of, any individual component or unit when, in the opinion of the Exchange, it appears that the extent of public distribution or the aggregate market value of such component or unit has become so reduced as to make continued listing on the Exchange inadvisable. In its review of the advisability of the continued listing of an individual component or unit, the Exchange will consider

the trading characteristics of such component or unit and whether it would be in the public interest for trading to continue.

(iii) if the AC fails to consummate its Business Combination within the time period specified by its constitutive documents or required by contract, or as provided by Section 102.06, whichever is shorter.

*At the Time of the Business Combination*

After shareholder approval of a Business Combination, the Exchange will consider whether the continued listing of the AC after consummation of the Business Combination will be in the best interests of the Exchange and the public interest and will have the discretion to suspend and commence delisting proceedings with respect to the AC prior to consummation of the Business Combination. An AC will not be eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to such a delisting determination, and any such AC will be subject to delisting procedures as set forth in Section 804.

*After Consummation of Business Combination*

After consummation of its Business Combination, a company that had originally listed as an AC will be subject to Section 801 and Section 802.01 in its entirety and will be required immediately upon consummation of the Business Combination to meet the following requirements:

(i) A price per share of at least $4.00;

(ii) a global market capitalization of at least $150,000,000;

(iii) an aggregate market value of publicly-held shares of at least $40,000,000*; and

(iv) the requirements with respect to shareholders and publicly-held shares set forth in Section 102.01A for companies listing in connection with an initial public offering.

* Shares held by directors, officers, or their immediate families and other concentrated holding of 10 percent or more are excluded in calculating the number of publicly-held shares.

If the resulting company would not meet the foregoing requirements, the Exchange will promptly initiate suspension and delisting of the AC.

*"Back Door Listing"*

When a listed AC consummates its Business Combination, the Exchange will require the AC to submit an original listing application which must be approved by the Exchange prior to consummation of the Business Combination. The Exchange will also consider whether the Business Combination gives rise to a "back door listing" as described in Section 703.08(E). If the resulting company would not qualify for original listing, the Exchange will promptly initiate suspension and delisting of the AC.

## Criteria for Closed-end Funds

The Exchange will promptly initiate suspension and delisting procedures with respect to closed-end funds if the total market value of publicly held shares* and net assets of the entity over 60 consecutive calendar days are each below $5,000,000. In addition, the Exchange will promptly initiate suspension and delisting procedures with respect to a closed-end fund if it ceases to maintain its closed-end status.

The Exchange will notify the closed-end fund if the total market value of publicly held shares* over a 60 calendar day period falls below $10,000,000 and will advise the closed-end fund of the delisting standard. Closed-end funds are not eligible to follow the procedures outlined in Sections 802.02 and 802.03.

The distribution standards for common stocks of operating companies set forth in Section 802.01A do not apply to closed-end funds. The Exchange would normally give consideration to the prompt initiation of suspension and delisting procedures with respect to the common stock of a closed-end fund if:

(A) the number of shares publicly held* is less than 200,000; or

(B) the total number of public stockholders* is less than 300; or

(C) the total market value of shares publicly held* is less than $1,000,000 for more than 90 calendar consecutive days.

* Shares held by directors, officers, or their immediate families and other concentrated holdings of 10 percent or more will be excluded in calculating the number of publiclyheld shares. "Public stockholders" exclude holders that are directors, officers, or their immediate families and holders of other concentrated holdings of 10% or more.

## Criteria for Income Deposit Securities

Income deposit securities traded as a unit will be subject to suspension and delisting if any of the component parts do not meet the applicable listing standards. However, if one or more of the components is otherwise qualified for listing, that component may remain listed.

### Criteria for Bonds

The Exchange will promptly initiate suspension and delisting procedures with respect to Bonds if:

(i) the aggregate market value or principal amount of publicly-held bonds is less than $1,000,000, or

(ii) the issuer is not able to meet its obligations on the listed debt securities.

Bonds are not eligible to follow the procedures outlined in Sections 802.02 and 802.03.

### Criteria for Preferred Stock, Guaranteed Railroad Stock and Similar Issues

The Exchange will promptly initiate suspension and delisting procedures with respect to Preferred Stock, Guaranteed Railroad Stock and Similar Issues if:

(i) the aggregate market value of publicly-held shares is less than $2,000,000, or

(ii) the number of publicly-held shares is less than 100,000.

These type of securities are not eligible to follow the procedures outlined in Sections 802.02 and 802.03.

### Criteria for Subscription Receipts Listed Under Section 102.08

The Exchange will immediately initiate suspension and delisting procedures with respect to Subscription Receipts if:

(i) the number of publicly-held shares* is less than 100,000;

(ii) the number of public holders* is less than 100;

(iii) the total market capitalization of the Subscription Receipts is below $15 million over 30 consecutive trading days;

(iv) the issuer's related common equity security ceases to be listed on the Exchange; or

(v) the issuer announces that the Specified Acquisition (as defined in Section 102.08) has been terminated.

\* Shares held by directors, officers, or their immediate families and other concentrated holdings of 10 percent or more are excluded in calculating the number of publicly-held shares. "Public holders" exclude holders that are directors, officers, or their immediate families and holders of other concentrated holdings of 10% or more.

An issuer of Subscription Receipts will not be eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to these criteria and any such security will be subject to delisting procedures as set forth in Section 804.

**Amended:** May 28, 2009 (NYSE-2009-49); July 14, 2009 (NYSE-2009-66); November 2, 2009 (NYSE-2009-109); December 9, 2013 (NYSE-2013-67); June 24, 2016 (NYSE-2016-22); March 10, 2017 (NYSE-2016-72); July 5, 2017 (NYSE-2017-11); July 27, 2017 (NYSE-2017-08); October 11, 2017 (NYSE-2017-31). 802.01CPrice Criteria for Capital or Common Stock A company will be considered to be below compliance standards if the average closing price of a security as reported on the consolidated tape is less than $1.00 over a consecutive 30 trading-day period.

 Once notified, the company must bring its share price and average share price back above $1.00 by six months following receipt of the notification. A company is not eligible to follow the procedures outlined in Paras. 802.02 and 802.03 with respect to this criteria. The company must, however, notify the Exchange, within 10 business days of receipt of the notification, of its intent to cure this deficiency or be subject to suspension and delisting procedures. In addition, a domestic company must disclose receipt of the notification by issuing a press release disclosing the fact that it has fallen below the continued listing standards of the Exchange within the time period allotted by SEC rules for the making of a filing with respect to Exchange notification of that event, but no longer than four business days after notification. A non-U.S. company must issue this press release within 30 days after notification. If the company fails to issue this press release during the allotted time period, the Exchange will issue the requisite press release. The company can regain compliance at any time during the six-month cure period if on the last trading day of any calendar month during the cure period the company has a closing share price of at least $1.00 and an average closing share price of at least $1.00 over the 30 trading-day period ending on the last trading day of that month. In the event that at the expiration of the six-month cure period, both a $1.00 closing share price on the last trading day of the cure period and a $1.00 average closing share price over the 30 trading-day period ending on the last trading day of the cure period are not attained, the Exchange will commence suspension and delisting procedures.

Notwithstanding the foregoing, if a company determines that, if necessary, it will cure the price condition by taking an action that will require approval of its shareholders, it must so inform the

Exchange in the above referenced notification, must obtain the shareholder approval by no later than its next annual meeting, and must implement the action promptly thereafter. The price condition will be deemed cured if the price promptly exceeds $1.00 per share, and the price remains above the level for at least the following 30 trading days.

Notwithstanding the foregoing, if the subject security is not the primary trading common stock of the company (e.g., a tracking stock or a preferred class) or is a stock listed under the Affiliated Company standard where the parent remains in "control" as that term is used in that standard, the Exchange may determine whether to apply the Price Criteria to such security after evaluating the financial status of the company and/or the parent/affiliated company, as the case may be.

**Amended:** September 2, 2009 (NYSE-2009-88).

802.01D Other Criteria—

If any of the following factors apply to a listed company, the Exchange may in its sole discretion subject the company to the procedures outlined in Paras. 802.02 and 802.03:

Reduction in Operating Assets and/or Scope of Operations

The operating assets have been or are to be substantially reduced such as by sale, lease, spin off, distribution, discontinuance, abandonment, destruction, condemnation, seizure or expropriation, or the company has ceased to be an operating company or discontinued a substantial portion of its operations or business for any reason whatsoever and whether or not any of the foregoing results from action by the company, related parties or persons unrelated to the company.

Bankruptcy and/or Liquidation—

An intent to file under any of the sections of the bankruptcy law has been announced or a filing has been made or liquidation has been authorized and the company is committed to proceed. If a company files or announces an intent to file for reorganization relief under the bankruptcy laws (or an equivalent foreign law), the Exchange may exercise its discretion to continue the listing and trading of the securities of the company. However, if a company that is below any continued listing standard enumerated in Para. 802.01B above (which may be determined on the basis of price indications) files or announces an intent to file for relief under any provisions of any bankruptcy laws, it is subject to immediate suspension and delisting. Similarly, if a company that files or announces an intent to file for relief under any provisions of any bankruptcy laws subsequently falls below any continued listing standard enumerated in Para. 802.01B above (which may be determined on the basis of price indications, it is subject to immediate suspension and delisting. Notwithstanding the foregoing, in the event that such company is profitable (or has positive cash flow), or is demonstrably in sound financial health despite the bankruptcy proceedings, the Exchange may evaluate and accept a Plan submitted under the procedures of 802.02 and 802.03.

Authoritative Advice Received that Security is Without Value—

Advice has been received, deemed by the Exchange to be authoritative, that the security is without value. In this connection, it should be noted that the Exchange does not pass judgment upon the value of securities.

Registration No Longer Effective—

The registration or exemption from registration pursuant to the Securities Exchange Act of 1934 is no longer effective for any reason.

Proxies are not Solicited for All Meetings of Stockholders—

Actively operating companies currently filing application to list on the Exchange must agree to solicit proxies from stockholders. Companies soliciting voluntarily, although not under agreement to solicit, which hereafter discontinue the practice, must agree to resume solicitation within one year after failure to solicit.

This does not apply where the issuer is not an actively operating company. Exception may be made where applicable law precludes or makes virtually impossible the solicitation of proxies in the United States.

Agreements are Violated—

The company, its transfer agent or registrar, violates any of its, or their, listing or other agreements with the Exchange.

Payment, Redemption or Retirement of Entire Class, Issue or Series—

Whenever the entire outstanding amount of a listed class, issue, or series is to be retired through payment at maturity, or through redemption, reclassification or otherwise.

Operations Contrary to Public Interest—

If the company or its management shall engage in operations which, in the opinion of the Exchange, are contrary to the public interest.

Audit Committee—

An Audit Committee in conformity with Exchange requirements is not maintained.

Specialized Securities—

Para. 703 contains listing standards for certain types of specialized securities: Warrants (703.12); Foreign Currency Warrants and Currency Index Warrants (703.15); Stock Index Warrants (703.17); Contingent Value Rights (703.18); Other Securities (703.19); Equity-Linked Debt Securities (703.21) and Equity Index-Linked Securities, Commodity-Linked Securities and Currency-Linked Securities (703.22). *

Delisting will be considered when:

• Number of publicly-held shares is less than 100,000.

• Number of holders is less than 100, except that this provision will not apply in the case of Equity Index-Linked Securities, Commodity-Linked Securities or Currency-Linked Securities (as defined in Para. 703.22) that are redeemable at the option of the holder on at least a weekly basis.

• Aggregate market value of shares outstanding is less than $1,000,000.

• For warrants and CVRs, if the related security is delisted; for equity-linked debt securities, if the issuer of the linked security is no longer subject to the reporting obligations of the Securities Exchange Act of 1934 or if the linked security no longer trades in a market in which there is last sale reporting.

• For specialized securities that are debt, the issuer is not able to meet its obligations on such debt.

The Exchange is not limited by the criteria set forth above. Rather, it may make an appraisal of, and determine on an individual basis, the suitability for continued listing of an issue in the light of all pertinent facts whenever it deems such action appropriate, even though a security meets or fails to meet any enumerated criteria. Other factors which may lead to a company's delisting include:

• The failure of a company to make timely, adequate, and accurate disclosures of information to its shareholders and the investing public.

• Failure to observe good accounting practices in reporting of earnings and financial position.

• Other conduct not in keeping with sound public policy.

• Unsatisfactory financial conditions and/or operating results.

•Most recent independent public accountant's opinion on the financial statements contains a:

(a) Qualified opinion;

(b) Adverse opinion;

(c) Disclaimer opinion; or

(d) Unqualified opinion with a "going concern" emphasis.

• Inability to meet current debt obligations or to adequately finance operations.

• Abnormally low selling price or volume of trading.

• Unwarranted use of company funds for the repurchase of its equity securities.

• A breach by the company of the terms of its listing agreement.

• Any other event or condition which may exist or occur that makes further dealings or listing of the securities on the Exchange inadvisable or unwarranted in the opinion of the Exchange.

**Amended:** August 15, 2013 (NYSE-2013-33).
802.01E SEC Annual and Quarterly Report Timely Filing Criteria
**Occurrence of a Filing Delinquency**

For purposes of remaining listed on the Exchange, a company will incur a late filing delinquency and be subject to the procedures set forth in this Section 802.01E on the date on which any of the following occurs:

- the company fails to file its annual report (Forms 10-K, 20-F, 40-F or N-CSR) or its quarterly report on Form 10-Q with the SEC by the date such report was required to be filed by the applicable form, or if a Form 12b-25 was timely filed with the SEC, the extended filing due date for the annual report or Form 10-Q (for purposes of this Section 802.01E, the later of these two dates, along with any Semi-Annual Report Filing Due Date as defined below, will be referred to as the "Filing Due Date" and the failure to file a report by the applicable Filing Due Date, a "Late Filing Delinquency");

- a listed foreign private issuer fails to file the Form 6-K containing semi-annual financial information required by Section 203.03 hereof (the "Semi-Annual Report") by the date specified in that rule (the "Semi-Annual Report Filing Due Date");

- the company files its annual report without a financial statement audit report from its independent auditor for any or all of the periods included in such annual report (a "Required Audit Report" and the absence of a Required Audit Report, a "Required Audit Report Delinquency");

- the company's independent auditor withdraws a Required Audit Report or the company files a Form 8-K with the SEC pursuant to Item 4.02(b) thereof disclosing that it has been notified by its independent auditor that a Required Audit Report or completed interim review should no longer be relied upon (a "Required Audit Report Withdrawal Delinquency"); or

- the company files a Form 8-K with the SEC pursuant to Item 4.02(a) thereof to disclose that previously issued financial statements should no longer be relied upon because of an error in such financial statements or, in the case of a foreign private issuer, makes a similar disclosure in a Form 6-K filed with the SEC or by other means (a "Non-Reliance Disclosure") and, in either case, the company does not refile all required corrected financial statements within 60 days of the issuance of the Non-Reliance Disclosure (an "Extended Non-Reliance Disclosure Event" and, together with a Late Filing Delinquency, a Required Audit Report Delinquency and a Required Audit Report Withdrawal Delinquency, a "Filing Delinquency") (for purposes of the cure periods described below, an Extended Non-Reliance Disclosure Event will be deemed to have occurred on the date of original issuance of the Non-Reliance Disclosure); if the Exchange believes that a company is unlikely to refile all required corrected financial statements within 60 days after a Non-Reliance Disclosure or that the errors giving rise to such Non-Reliance Disclosure are particularly severe in nature, the Exchange may, in its sole discretion, determine earlier than 60 days that the applicable company has incurred a Filing Delinquency as a result of such Non-Reliance Disclosure.

The Exchange will also deem a company to have incurred a Filing Delinquency if the company submits an annual report or Form 10-Q to the SEC by the applicable Filing Due Date, but such filing fails to include an element required by the applicable SEC form (or, in the case of a required Semi-Annual Report, fails to include an element required by Section 203.03 hereof) and the Exchange determines in the Exchange's sole discretion that such deficiency is material in nature.

The annual report, Form 10-Q or Semi-Annual Report that gives rise to a Filing Delinquency shall be referred to in this Section 802.01E as the "Delinquent Report."

## Subsequent Late Reports

A company that has an uncured Filing Delinquency will not incur an additional Filing Delinquency if it fails to file a subsequent annual report, Form 10-Q or Semi-Annual Report (a "Subsequent Report") by the applicable Filing Due Date for such Subsequent Report. However, in order for the

company to cure its initial Filing Delinquency, no Subsequent Report may be delinquent or deficient on the date by which the initial Filing Delinquency is required to be cured.

**Notification and Cure Periods**

Upon the occurrence of a Filing Delinquency, the Exchange will promptly send written notification (the "Filing Delinquency Notification") to a company of the procedures set forth below. Within five days of the date of the Filing Delinquency Notification, the company will be required to (a) contact the Exchange to discuss the status of the Delinquent Report and (b) issue a press release disclosing the occurrence of the Filing Delinquency, the reason for the Filing Delinquency and, if known, the anticipated date such Filing Delinquency will be cured via the filing or refiling of the applicable report, as the case may be. If the company has not issued the required press release within five days of the date of the Filing Delinquency Notification, the Exchange will issue a press release stating that the company has incurred a Filing Delinquency and providing a description thereof.

During the six-month period from the date of the Filing Delinquency (the "Initial Cure Period"), the Exchange will monitor the company and the status of the Delinquent Report and any Subsequent Reports, including through contact with the company, until the Filing Delinquency is cured. If the company fails to cure the Filing Delinquency within the Initial Cure Period, the Exchange may, in the Exchange's sole discretion, allow the company's securities to be traded for up to an additional six-month period (the "Additional Cure Period") depending on the company's specific circumstances. If the Exchange determines that an Additional Cure Period is not appropriate, suspension and delisting procedures will commence in accordance with the procedures set out in Section 804.00 of the Listed Company Manual. A company is not eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to these criteria. Notwithstanding the foregoing, however, the Exchange may in its sole discretion decide (i) not to afford a company any Initial Cure Period or Additional Cure Period, as the case may be, at all or (ii) at any time during the Initial Cure Period or Additional Cure Period, to truncate the Initial Cure Period or Additional Cure Period, as the case may be, and immediately commence suspension and delisting procedures if the company is subject to delisting pursuant to any other provision of the Listed Company Manual, including if the Exchange believes, in the Exchange's sole discretion, that continued listing and trading of a company's securities on the Exchange is inadvisable or unwarranted in accordance with Sections 802.01A, 802.01B, 802.01C or 802.01D of the Listed Company Manual. The Exchange may also commence suspension and delisting procedures without affording any cure period at all or at any time during the Initial Cure Period or Additional Cure Period if the Exchange believes, in the Exchange's sole discretion, that it is advisable to do so on the basis of an analysis of all relevant factors, including but not limited to:

- whether there are allegations of financial fraud or other illegality in relation to the company's financial reporting;

- the resignation or termination by the company of the company's independent auditor due to a disagreement;

- any extended delay in appointing a new independent auditor after a prior auditor's resignation or termination;

- the resignation of members of the company's audit committee or other directors;

- the resignation or termination of the company's chief executive officer, chief financial officer or other key senior executives;

- any evidence that it may be impossible for the company to cure its Filing Delinquency within the cure periods otherwise available under this rule; and

- any past history of late filings.

In determining whether an Additional Cure Period after the expiration of the Initial Cure Period is appropriate, the Exchange will consider the likelihood that the Delinquent Report and all Subsequent Reports can be filed or refiled, as applicable, during the Additional Cure Period, as well as the company's general financial status, based on information provided by a variety of sources, including the company, its audit committee, its outside auditors, the staff of the SEC and any other regulatory body. The Exchange strongly encourages companies to provide ongoing disclosure on the status of the Delinquent Report and any Subsequent Reports to the market through press releases, and will also take the frequency and detail of such information into account in determining whether an Additional Cure Period is appropriate. If the Exchange determines that an Additional Cure Period is appropriate and the company fails to file the Delinquent Report and all Subsequent Reports by the end of such Additional Cure Period, suspension and delisting procedures will commence immediately in accordance with the procedures set out in Section 804.00. In no event will the Exchange continue to trade a company's securities if that company (i) has failed to cure its Filing Delinquency or (ii) is not current with all Subsequent Reports, on the date that is twelve months after the company's initial Filing Delinquency.

   **Amended:** March 2, 2015 (NYSE-2014-65); February 19, 2016 (NYSE-2016-12).
802.01F Noncompliance with Section 303A.14 (Erroneously Awarded Compensation)
(a) Suspension of Trading in the Event of Noncompliance with Section 303A.14

In the event that the Exchange determines that a listed issuer is non-compliant with any of the provisions of Section 303A.14 (Erroneously Awarded Compensation) and such listed issuer does not regain compliance with such provision within any compliance period provided by the Exchange under Section 802.01F(c) below, all the listed securities of such issuer will be immediately suspended and the Exchange will immediately commence delisting procedures with respect to all such listed securities. A listed issuer will not be eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to such a delisting determination, and any such listed issuer will be subject to delisting procedures as set forth in Section 804.

(b) Events of Noncompliance with Section 303A.14

A listed issuer will be deemed to be below standards in the event of any failure by such listed issuer to comply with any requirement of Section 303A.14 (a "Clawback Requirement Delinquency"). The listed issuer would be required to notify the Exchange in writing within five days of any type of Clawback Requirement Delinquency.

When the Exchange determines that a Clawback Requirement Delinquency has occurred, the Exchange will promptly send written notification (the "Clawback Requirement Delinquency Notification") to a listed issuer of the procedures set forth below. Within five days of the date of receipt of a Clawback Requirement Delinquency Notification, the listed issuer will be required to (a) contact the Exchange to discuss the status of resolution of the Clawback Requirement Delinquency and (b) issue a press release disclosing the occurrence of the Clawback Requirement Delinquency, the reason for the Clawback Requirement Delinquency and, if known, the anticipated date the Clawback Requirement Delinquency will be cured. If the listed issuer has not issued the required press release within five days of the date of the Clawback Requirement Delinquency Notification, the Exchange will issue a press release stating that the issuer has incurred a Clawback Requirement Delinquency and providing a description thereof.

(c) Cure Periods for Events of Noncompliance with Section 303A.14

During the six-month period from the date of the Clawback Requirement Delinquency (the "Initial Clawback Requirement Delinquency Cure Period"), the Exchange will monitor the listed issuer and the status of resolution of the Clawback Requirement Delinquency, including through contact with the listed issuer, until the Clawback Requirement Delinquency is cured. If the listed issuer fails to cure the Clawback Requirement Delinquency within the Initial Clawback Requirement Delinquency Cure Period, the Exchange may, in its sole discretion, allow the listed issuer's securities to be traded for up to an additional six-month period (the "Additional Clawback Requirement Delinquency Cure Period") depending on the listed issuer's specific circumstances and as described in Section 802.01F(d) below. If the Exchange determines that an Additional Clawback Requirement Delinquency Cure Period is not appropriate, suspension and delisting procedures will

commence in accordance with the procedures set out in Section 804.00 of the Listed Company Manual. A listed issuer is not eligible to follow the procedures outlined in Sections 802.02 and 802.03 with respect to these criteria. Notwithstanding the foregoing, however, the Exchange may in its sole discretion decide (i) not to afford a listed issuer any Initial Clawback Requirement Delinquency Cure Period or Additional Clawback Requirement Delinquency Cure Period, as the case may be, at all, or (ii) at any time during the Clawback Requirement Delinquency Cure Period or Additional Clawback Requirement Delinquency Cure Period, to truncate the cure period and immediately commence suspension and delisting procedures if the listed issuer is subject to delisting pursuant to any other provision of the Listed Company Manual, including if the Exchange believes, in the Exchange's sole discretion, that continued listing and trading of a listed issuer's securities on the Exchange is inadvisable or unwarranted in accordance with Sections 802.01A, 802.01B, 802.01C, 802.01D or 802.01E of the Listed Company Manual. In determining whether an Initial Clawback Requirement Delinquency Cure Period or Additional Clawback Requirement Delinquency Cure Period is appropriate, or whether such period should be truncated, the Exchange will consider the likelihood that the Clawback Requirement Delinquency can be cured during such period. The Exchange may also commence suspension and delisting procedures without affording any cure period at all or at any time during the Initial Clawback Requirement Delinquency Cure Period or Additional Clawback Requirement Delinquency Cure Period if the Exchange believes, in the Exchange's sole discretion, that it is advisable to do so on the basis of an analysis of all relevant factors.

(d) Additional Cure Period for Events of Noncompliance with Section 303A.14

In determining whether an Additional Clawback Requirement Delinquency Cure Period after the expiration of the Initial Clawback Requirement Delinquency Cure Period is appropriate, the Exchange will consider the likelihood that the Clawback Requirement Delinquency can be cured during the Additional Clawback Requirement Delinquency Cure Period. If the Exchange determines that an Additional Clawback Requirement Delinquency Cure Period is appropriate and the listed issuer fails to cure its Clawback Requirement Delinquency by the end of that period, suspension and delisting procedures will commence immediately in accordance with the procedures set out in Section 804.00. In no event will the Exchange continue to trade a listed issuer's securities if that listed issuer has failed to cure its Clawback Requirement Delinquency on the date that is twelve months after the date of sending of the Clawback Requirement Delinquency Notification.

**Adopted:** June 9, 2023 (NYSE-2023-12).

## Footnotes

\*   Para. 703.16 contains listing standards for Investment Company Units; that paragraph also contains continued listing criteria for those instruments.