# CRAVATH

Wes Earnhardt
wearnhardt@cravath.com
+1-212-474-1138
New York

August 2, 2024

**Re:   *FuboTV Inc. et al. v. The Walt Disney Company et al., No. 24-cv-01363***

Dear Judge Garnett:

        Pursuant to Rule I(D)(3)(iii) of Your Honor's Individual Rules and Practices, Defendants in the above-captioned matter respectfully move to seal, during the PI Hearing scheduled to begin on August 6, Defendants' active and recent carriage agreements, and the content of confidential offers made to third-party distributors, including those subject to ongoing negotiations. Sealing such information is necessary to protect Defendants' and third parties' competitively sensitive information. Defendants' carriage agreements are the lifeblood of their businesses. Were information regarding Defendants' carriage agreements and offers Defendants have made to MVPDs made public, other MVPDs (including Fubo) would use that information against Defendants in current and future negotiations, and Defendants' competitors (other programmers) would likewise tailor their own future offers and deals with MVPDs based on what they have learned. Defendants have worked diligently ***not*** to disclose competitively sensitive information with one another during the formation of Venu and have mechanisms in place to prevent the exchange of such information during its operation. It would be a perverse outcome if Fubo's preliminary injunction motion caused the revelation of that competitively sensitive information. Put simply, disclosing the narrow categories of information that Defendants move to seal would have an immediate, devastating impact on Defendants' commercial interests.

        The parties have worked diligently to reach agreement on appropriate measures to balance the right to public access to courtroom exhibits and testimony with the protection of confidential materials. In a forthcoming stipulation, the parties will propose a procedure for protecting confidential information while imposing a minimal burden on the right to public access. Under the proposed stipulation, the Court, parties and witnesses would still have access to sealed information during the PI Hearing. For example, counsel could ask a witness to confirm that a party had made or received a particular offer reflected in an exhibit displayed without redactions on monitors for the Court, witness and counsel, without disclosing publicly the competitively sensitive information contained therein. Courts in this district and elsewhere have followed similar processes for protecting confidential information during preliminary injunction hearings and trials. *See, e.g., Fed. Trade Comm'n v. IQVIA Holdings Inc.*, No. 23 Civ. 06188 (ER), (S.D.N.Y. Nov. 28, 2023), ECF. No. 317 at 824-25 (permitting monitors visible to the public to be turned off but otherwise keeping trial proceedings open to the public); *Epic Games, Inc. v. Apple, Inc.*, No. 20-cv-05640 YGR (N.D. Cal. May 10, 2024), ECF. No. 911 at 239-40.

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

The parties also have agreed that certain categories of information should be treated as sealed and handled under the forthcoming procedures, subject to the Court's approval. The parties will submit those categories to the Court in short order.

However, the parties are at an impasse on whether two narrow categories of additional documents should be sealed. Defendants contend the following information should be sealed whereas Plaintiff disagrees: (1) the parties' carriage agreements and (2) the content of confidential offers made to third-party distributors. This highly sensitive information, if made public, would cause serious competitive harm to Defendants, especially given that the parties and testifying third parties ***in this case*** are competitors. Although the procedure we have proposed above will cover the vast majority of documents and testimony that fall under these two categories, there may be limited circumstances in which a party is unable to effectively conduct examination using these procedures. Therefore, Defendants request to seal the courtroom and exclude the public in those limited circumstances. For example, Mr. Justin Connolly, Disney's President of Platform Distribution, may testify at trial regarding certain offers made to third parties, including offers that are subject to current, ongoing confidential negotiations. Indeed, Plaintiff has informed Disney that it intends to ask questions about specific terms of these offers during the PI hearing. In these limited circumstances, it would be appropriate to seal the courtroom. *See Encyclopedia Brown Prods. Ltd. v. Home Box Off., Inc.*, 1999 WL 126460, at *5 (S.D.N.Y. Mar. 10, 1999) (reasoning that where "testimony must unavoidably touch on sensitive information", a "temporary closure of the court may be appropriate").[1]

The Second Circuit has held that, notwithstanding the presumption of access to judicial proceedings, information may be kept under seal if sealing is necessary to preserve higher values, including business secrecy. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995); *see also* Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for good cause, issue an order . . . requiring . . . confidential . . . commercial information not be revealed"). Parties looking to close the courtroom must show a "substantial probability of prejudice to a compelling interest". *See Huminski v. Corsones*, 396 F.3d 53, 86 (2d Cir. 2005); *see also Newsday LLC v. Cnty. Of Nassau*, 730 F.3d 156, 163 n.8 (2d Cir. 2013) ("A district judge considering whether to close a courtroom is necessarily engaged in an exercise of prediction regarding the *potential* for disclosure of material that may justifiably be protected even against the presumptive right of public access.") (emphasis in original).

**Carriage Agreements.** Defendants' carriage agreements contain some of the most sensitive and proprietary information that go to the heart of Defendants' respective video entertainment businesses. *See* Declaration of Justin Connolly ("Connolly Decl.") ¶ 6; Declaration of David Espinosa ("Espinosa Decl.") ¶ 6; Declaration of Scott Miller ("Miller Decl.") ¶ 10. For example, these agreements include the penetration rates for Defendants' networks, and tiering and packaging terms for Defendants' networks, which are among the most highly negotiated and contentious terms in carriage agreements and differ across programmers and distributors. *See id.* Without opposition from Plaintiff, this Court already has granted motions to seal this information in connection with the parties' briefs on the motion for preliminary injunction. *See, e.g.*, Dkt. 90-1 (Exhibit 89), Dkt. 90-2 (Exhibit 41), Dkts. 90-3 to 90-5 (Exhibit

---

[1] Non-party EchoStar Corporation ("EchoStar") has requested sealing of certain information presented at the PI Hearing. Defendants take no position as to EchoStar's documents, except to agree that EchoStar's carriage agreements with Defendants merit confidential treatment. Defendants respectfully request that in the limited circumstance where any testimony has to be sealed it occur in a closed courtroom with non-participants excluded. *See* Dkt. 241.

100) and Dkt. 90-7 (Exhibit 42).  And recognizing the highly sensitive nature of this type of information, Plaintiff has consented to treating as confidential during the PI hearing pricing terms of the parties' carriage agreements.

The penetration, tiering and packaging terms in carriage agreements are just as sensitive as the pricing terms.  Indeed, pricing, penetration, tiering and packaging are all part of a single economic value exchange; the terms of one will impact the terms of the others.  All of that information should be sealed.  That is consistent with how courts in this district seal "confidential business terms", when their disclosure would result in "competitive harm" to a party, such as a "disadvantage . . . in future . . . negotiations with third parties".  *News Corp. v. CB Neptune Holdings, LLC*, 2021 WL 3409663, at *2 (S.D.N.Y Aug. 4, 2021); *see also White v. UMG Recordings, Inc.*, 2024 WL 726926, at *1 (S.D.N.Y. Jan. 5, 2024) (sealing royalties and licensing arrangements from agreements for production and recording services because such redactions are appropriate and narrowly tailored to protect Defendants' privacy interests and confidential business information)*; Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559 (PGG) (KHP), 2021 WL 1085338, at *1 (S.D.N.Y Mar. 22, 2021) (granting motion to seal documents containing the terms of confidential trademark licensing agreements); *Alt. Coast Conf. v. Bd. of Trs. Of Fla. State Univ.*, No. 2023-CVS-40918-590, 2024 WL 1494376, at *5 (N.C. Bus. Ct. Apr. 5, 2024).  Disclosing this information would inject highly proprietary information into the public sphere and prejudice Defendants' ability to conduct negotiations with distributors, who would have suddenly gained access to all information regarding their competitors' deals and terms.  *See* Connolly Decl. ¶¶ 8-9, 11-12; Espinosa Decl. ¶ 11; Miller Decl. ¶ 9.

**Offers to Third-Parties.**  Courts in this district have also held that "confidential information about recent negotiations with other parties [that] would inflict a significant competitive disadvantage" if publicly disclosed.  *See Metacapital Mgmt. v. Meta Platforms, Inc.*, 2024 WL 1555591, at *2 (S.D.N.Y. Apr. 10, 2024).  That is because any such disclosures would give Defendants' current and future counterparties a negotiating advantage, and would grant Defendants' competitors an unearned advantage in competing with each of the Defendants.  Connolly Decl. ¶ 12; Espinosa Decl. ¶ 9; Miller Decl. ¶ 9.  Thus, courts have often "found that such sensitive business information, including negotiations, may remain under seal even where a stronger presumption of access would apply".  *Meta Platforms*, 2024 WL 1555591, at *3.  This Court has also already granted a motion to seal similar information about offers made during the course of a confidential negotiation.  *See* Dkt. 215.

Confidentiality provisions Defendants have agreed to with their negotiating counter-parties also obligate Defendants to keep confidential the terms of their carriage agreements and offers from disclosure to third parties.  Dkt. 90-1 at 55 (containing a representative confidentiality provision).  Disclosure of this highly confidential information to the public would not only harm Defendants, but would also harm the third parties to whom Defendants owe such obligations.  An order from this Court sealing this information during the PI Hearing would be narrowly tailored to accommodate public access to the proceedings while also preventing prejudice to Defendants' interests in maintaining the confidentiality of Defendants' carriage agreements and offers made to third parties.  Defendants respectfully request that the Court seal the confidential terms of Defendants' carriage agreements (*i.e.*, penetration, tiering and packaging terms) and the content of confidential offers made to third-party distributors.

Sincerely,

_/s/ J. Wesley Earnhardt_
J. Wesley Earnhardt


The Honorable Margaret M. Garnett
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

cc:  All counsel of record

VIA ECF