KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

───

(202) 326-7900

FACSIMILE:
(202) 326-7999

September 10, 2024

The Honorable Margaret M. Garnett
United States District Court for the Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

    Re:    *fuboTV Inc., et al. v. The Walt Disney Company, et al.,* No. 24-cv-1363

Dear Judge Garnett:

    Pursuant to Your Honor's Order, Doc. 294, the parties respectfully submit this joint letter setting forth their respective positions on scheduling in advance of the September 12 conference. The parties' proposed schedules are set forth in Appendix A to this letter.

    **Plaintiffs' Position:** Defendants have informed Fubo that they intend to move to dismiss Fubo's claims in lieu of filing answers. Fubo will oppose those motions and has agreed to Defendants' proposed briefing schedule (as set forth in Appendix A). Fox also, for the first time after seven months of litigating this case, has informed Fubo that it intends to move to transfer Fubo's claims against Fox to the Central District of California. Fubo will oppose that motion if and when Fox files it; Fubo submits that it would be most efficient to brief any such motion on the same schedule as Defendants' motions to dismiss. In all events, briefing on any motions Defendants may file should not impact the discovery schedule in this case.

    Fubo respectfully submits that the parties have already engaged in substantial discovery, and that the remaining discovery can be completed within the timeframe suggested by the Court in its August 26 order and in accordance with the Court's Civil Case Management Plan and Scheduling Order ("Order")—assuming appropriate cooperation from Defendants and third parties. Fubo believes that the parties can reasonably complete discovery by February 2025. This would allow for four months of fact discovery (the default maximum under Section 5(e) of the Order) followed by 1.5 months of expert discovery (the default maximum under Section 8(a)).

    To date, the parties (including third parties) have produced more than 515,000 documents and taken 28 depositions. While this discovery focused on Defendants' joint venture, much of this discovery bears on Fubo's tying and MFN claims (in large part because Defendants insisted on disputing at the hearing that they force distributors to bundle their channels together). Fubo

September 10, 2024
Page 2

expects that the parties will be able to leverage this existing discovery to narrow the scope of future discovery related to Fubo's tying and MFN claims. For example, Fubo has already offered to limit the scope of any depositions of witnesses who have already been deposed once.

Fubo's proposed schedule is reasonable given the remaining needs of discovery. At this juncture, Fubo expects to seek additional discovery on the following subjects: (1) Defendants' bundling practices and negotiations with distributors; (2) Defendants' MFN clauses and "round-tripping" arrangements with certain distributors; (3) developments regarding the JV since April 30, 2024 (the original cutoff date for custodial document productions); and (4) data and information that Fubo's experts may use for market analyses. (Fubo reserves the right to identify and pursue additional categories of discovery as it continues to investigate its claims.)

Defendants, by contrast, have proposed a lengthy schedule in which discovery would not end until June 2025 and trial would not occur until October 2025. Defendants offer no meaningful basis for this leisurely pace. Defendants suggest that discovery on their bundling practices must "go back decades," but Fubo's tying claims concern carriage agreements signed in the past four years. Defendants also offer a laundry list of issues they intend to explore in discovery, but many of these are simply variations on a single theme. And much of the discovery Defendants say they intend to take appears overbroad: for example, Defendants have suggested that they may issue subpoenas to every participant in each relevant market. Defendants' excessive discovery demands will consume unnecessary time and impose needless costs. The parties will benefit from a schedule that demands efficiency and will not permit obfuscation and foot-dragging.

Indeed, Defendants have obtained expedited briefing on their appeal of this Court's injunction order by arguing that "time is of the essence" to resolve this case. *See* Unopposed Emergency Motion to Expedite Appeal, Case No. 24-2210 (filed Aug. 27, 2024). But here they tell a different story, proposing a laggardly schedule that will not provide an outcome until early 2026.

Fubo is concerned that Defendants seek to delay and deflect via scorched-earth discovery and motion practice. Fubo respectfully urges the Court to keep this case on an efficient and expeditious track, just as it did with the PI hearing. The parties capably completed discovery in advance of that hearing in roughly three months, *see* Doc. 140; they should be able to complete remaining discovery within six. The case can then be ready for trial by early 2025, consistent with the Court's suggestion in its August 26 Order, or at the very latest by mid-2025 (if Defendants continue to insist on seeking summary judgment).

**Defendants' Position:** Defendants intend to move to dismiss Fubo's Sherman Act Section 1 and Donnelly Act claims concerning (i) Disney's and Fox's bundling practices, which Plaintiffs assert constitute anticompetitive tying (Plaintiffs do not bring tying claims against WBD); and (ii) most-favored-nation ("MFN") clauses in certain carriage agreements. Those claims

September 10, 2024
Page 3

fail as a matter of law and should be dismissed, which would impact the scope of discovery going forward.  Additionally, Fox intends to move to transfer Fubo's claims against Fox alone concerning the Fox-Fubo Carriage Agreement to the Central District of California pursuant to the exclusive forum selection clause in that agreement.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013).

There has been little to no discovery into Fubo's tying and MFN claims.  The limited PI discovery taken to date has related to the JV.  PI discovery was thus limited to a one-year period during which Defendants discussed the proposed JV.  But unlike the JV, each of the Defendants has engaged, separately, in their own licensing practices, and these practices have existed for decades, and when Fubo entered the market in 2015, which means that discovery for those claims must start much earlier than the discovery required for the PI.  Nor are the topics of discovery the same.  Fubo's tying claims require analysis of entirely different purported markets than the court has analyzed so far—namely, the upstream market for Commercially Critical Sports Channels (the purported tying product) and the upstream market for Non-Critical Television Channels (the purported tied product).  Thus, the scope and focus of discovery will differ.

If Fubo's tying claims survive Defendants' motions to dismiss, there will need to be discovery on numerous disputed factual issues, including (1) whether there are separate product markets for Commercially Critical Sports Channels and for Non-Critical Television Channels; (2) whether Disney or Fox have market power in the tying market; (3) whether there are barriers to entry in the tied market and, if so, whether Disney's or Fox's practices have elevated those barriers to entry; (4) whether any potential competitor has been foreclosed from entering the tied market and, if so, what effect that had on overall competition; (5) the overall state of competition in the tied market and what impact, if any, Disney's or Fox's licensing practices have had on the price, quantity or quality of Non-Critical Television Channels; (6) Fubo's decision to enter the market understanding the industry's pre-existing bundling practices; (7) the ability of Fubo and other distributors to license Non-Critical Television Channels from programmers other than Disney and Fox; (8) whether, and to what extent, Fubo has been harmed by Disney's and Fox's practices and whether any such harm constitutes antitrust injury; and more.  Still more discovery will be needed on the genesis and purpose of the MFN provisions at issue in Fubo's MFN claims, including the alleged relevant market, whether the Defendants have market power, whether the Defendants' MFN provisions had any effect on competition and on Fubo, the extent to which distributors like Fubo seek MFNs from programmers, and the various procompetitive benefits of MFN provisions.  Much of that discovery will need to come from third parties because the appropriate inquiry is, first and foremost, the impact of Defendants' practices on competition in the overall market.  Participants in the relevant markets are important potential sources of that discovery.  Moreover, extensive and complicated expert discovery is required to analyze anticompetitive effects in dynamic markets like these, and to analyze any damages models Fubo may offer.  Indeed, discovery in this case needs to be more extensive and more complex than even a typical antitrust case because, here, there are three different defendant groups with different practices and different factual defenses to different claims.  This case really is six cases in one: tying claim against Disney; tying claim against Fox; MFN claim against Disney and Hulu; MFN claim against Fox; MFN claim against WBD; and Section 7 JV claim against Fox, Disney and WBD.

In light of the substantial and complex discovery that remains to be taken, Defendants believe that a February 2026 trial date would offer the most reasonable (and still unusually fast) schedule, but any trial date before October 2025 simply is not achievable given the time necessary for Defendants to respond to Fubo's experts, among other reasons. Defendants therefore respectfully request that trial begin no earlier than October 2025, as set forth in Appendix A.[1] Even an October 2025 trial date is aggressive for an antitrust case of this magnitude. In this District, the median time between the filing of a complaint and trial in a private antitrust case is 59 months; 77% of cases take 35 to 107 months to reach trial.[2] If this case is tried in October 2025, only 20 months will have elapsed between the filing of the Complaint and the trial on the merits, despite conducting a PI hearing in the interim. The **13-month** period between today and October 2025 would be exceptionally quick for an antitrust case. Other private antitrust cases in this District took substantially longer to reach trial. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 1:13-cv-07789-LGS (S.D.N.Y. Oct. 21, 2022 date of docket entry noting first day of trial) (Dkt. No. 2001) (***107 months***); *Fed. Savings Bank v. ACE Watanasuparp*, 1:15-cv-03548-AKH (S.D.N.Y. May 24, 2018) (Dkt. No. 162) (***35 months***); *Del Norte v. WorldBusiness Capital, Inc.*, 1:14-cv-10143-CM-KNF (S.D.N.Y. July 20, 2017) (Dkt. No. 227) (***29 months***); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 1:12-cv-05541-JGK (S.D.N.Y. Dec. 14, 2015) (Dkt. No. 229) (***39 months***); *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 1:09-cv-08578-JPO-HBP (S.D.N.Y. Aug. 21, 2014) (Dkt. No. 211) (***57 months***); *Ross v. Bank of America*, 1:05-cv-07116-WHP-JCF (S.D.N.Y. Feb. 15, 2013) (Dkt. No. 512) (***88 months***); *In re Oxycontin Antitrust Litig.*, 1:04-md-01603-SHS (S.D.N.Y. Oct. 29, 2013) (Dkt. No. 599) (***113 months***); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 1:03-cv-00172-PKC (S.D.N.Y. July 11, 2008) (Dkt. No. 221) (***65 months***); *Sanofi-Synthelabo v. Apotex Inc.*, 1:02-cv-02255-SHS (S.D.N.Y. April 26, 2007) (Dkt. No. 367) (***59 months***).

The circumstances in this case do not justify Plaintiffs' extraordinarily expedited trial schedule. This is particularly true given that the Court has granted a PI to maintain the status quo during the litigation of these claims. Each Defendant is entitled to mount its own defense based on its own factual circumstances, which means each Defendant should have the time and ability to take adequate discovery on each claim. Given all the discovery that remains to be taken—especially third-party and expert discovery—Defendants do not believe it is feasible to prepare this case for trial in a handful of months. Moreover, Fubo's proposed schedule is not only unrealistic, but also one sided. Notably, Fubo asks for more than *four months* to prepare its expert reports and then demands that Defendants submit their rebuttals within *two weeks*. Then, Fubo proposes that Defendants have a *single* week to depose Fubo's experts after receiving their reply reports. That will not suffice, particularly in light of the complex expert analysis this case demands. Finally, Defendants expect that discovery will confirm that Fubo cannot raise a triable issue of material fact to support its claims, and, therefore, Defendants intend to move for summary judgment, as contemplated by the Federal Rules of Civil Procedure. For the reasons set

---

[1] Defendants offered a October 2025 trial date as a compromise, between the June 2025 and February 2026 proposals, but Fubo rejected it.

[2] These data come from a Lex Machina search at https://law.lexmachina.com, on private antitrust cases in this District pending from 2009 forward, with a resolution involving trial.

September 10, 2024
Page 5

forth above, Defendants respectfully request that the Court enter Defendants' proposed schedule in Appendix A.

September 10, 2024
Page 6

Respectfully submitted,

Dated:  September 10, 2024

| /s/ Thomas G. Schultz | /s/ Antony L. Ryan |
|---|---|
| Mark C. Hansen (admitted *pro hac vice*) | Antony L. Ryan |
| Evan T. Leo (admitted *pro hac vice*) | Joe Wesley Earnhardt |
| Kevin J. Miller (admitted *pro hac vice*) | Yonatan Even |
| Joseph S. Hall (SDNY Bar No. JH2612) | Damaris Hernández |
| Thomas G. Schultz (admitted *pro hac vice*) | Michael P. Addis |
| Joshua Hafenbrack (admitted *pro hac vice*) | CRAVATH, SWAINE & MOORE LLP |
| KELLOGG, HANSEN, TODD, FIGEL   & FREDERICK, P.L.L.C. | 375 Ninth Avenue |
| 1615 M Street, NW | New York, NY 10001 |
| Suite 400 | Tel.:  (212) 474-1000 |
| Washington, DC 20036 | Fax:  (212) 474-3700 |
| Tel.:  (202) 326-7900 | Email:  aryan@cravath.com |
| Fax:  (202) 326-7999 |          wearnhardt@cravath.com |
| Email:  mhansen@kellogghansen.com |          yeven@cravath.com |
|          eleo@kellogghansen.com |          dhernandez@cravath.com |
|          kmiller@kellogghansen.com |          maddis@cravath.com |
|          jhall@kellogghansen.com | |
|          tschultz@kellogghansen.com | *Counsel for Defendants The Walt Disney Company, ESPN, Inc., ESPN Enterprises, Inc., and Hulu, LLC* |
|          jhafenbrack@kellogghansen.com | |
| *Counsel for Plaintiffs fuboTV Inc. and fuboTV Media Inc.* | |

September 10, 2024
Page 7

| | |
|---|---|
| */s/ Andrew J. Levander* | */s/ David L. Yohai* |
| Andrew J. Levander | David L. Yohai |
| Steven E. Bizar | Adam C. Hemlock |
| Steven A. Engel | Theodore E. Tseskerides |
| DECHERT LLP | Elaina K. Aquila |
| 1095 Avenue of the Americas | Robert W. Taylor |
| New York, NY 10036 | WEIL, GOTSHAL & MANGES LLP |
| Tel.: (212) 698-3500 | 767 Fifth Avenue |
| Fax: (212) 698-3500 | New York, NY 10153 |
| Email: andrew.levander@dechert.com | Tel.: (212) 310-8000 |
| steven.bizar@dechert.com | Fax: (212) 310-8007 |
| steven.engel@dechert.com | Email: david.yohai@weil.com |
| | adam.hemlock@weil.com |
| Michael H. McGinley (admitted *pro hac vice*) | elaina.aquila@weil.com |
| | robert.taylor@weil.com |
| DECHERT LLP | theodore.tsekerides@weil.com |
| Cira Center | |
| 2929 Arch Street | *Counsel for Defendant Warner Bros.* |
| Philadelphia, PA 19104 | *Discovery, Inc.* |
| Email: michael.mcginley@dechert.com | |

John (Jay) Jurata, Jr. (admitted *pro hac vice*)
Erica Fruiterman (admitted *pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Email: jay.jurata@dechert.com
   erica.fruiterman@dechert.com

*Counsel for Defendant Fox Corporation*

September 10, 2024
Page 8

**Appendix A.**

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Pretrial Conference | Sept. 12, 2024 | Sept. 12, 2024 |
| Parties Serve Initial Disclosures | Sept. 19, 2024 | Sept. 19, 2024 |
| Parties Serve Initial Written Discovery Requests | Sept. 12, 2024 | Sept. 19, 2024 |
| Defendants File MTDs | Sept. 26, 2024 | Sept. 26, 2024 |
| Fubo Files Opposition to MTDs | Oct. 25, 2024 | Oct. 25, 2024 |
| Defendants File Replies ISO MTDs | Nov. 13, 2024 | Nov. 13, 2024 |
| Deadline for Substantial Completion of Production of Documents in Response to Initial Requests for Production | Nov. 1, 2024 | January 24, 2025 |
| Close of Fact Discovery | Jan. 10, 2025 | March 21, 2025 |
| Deadline for All Counsel to Meet and Confer Regarding Settlement | Jan. 24, 2025 | April 4, 2025 |
| Post-Fact Discovery Conference | Jan. 24, 2025 | April 4, 2025 |
| Plaintiffs Serve Expert Reports | Jan. 27, 2025 | March 28, 2025 |
| Defendants Serve Expert Rebuttal Reports | Feb. 10, 2025 | May 23, 2025 |
| Plaintiffs Serve Expert Reply Reports | Feb. 21 2025 | June 16, 2025 |
| Close of Expert Discovery | Feb. 28, 2025 | June 30, 2025 |
| Deadline to File MSJ | Mar. 7, 2025 | July 3, 2025 |
| Deadline to File Oppositions to MSJ | Mar. 28, 2025 | Aug. 1, 2026 |
| Deadline to File Replies ISO MSJ | Apr. 11, 2025 | Aug. 19, 2025 |
| Parties File Motions in Limine (including Daubert motions) | Apr. 18, 2025 | Aug. 29, 2025 |
| Parties File Oppositions to Motions in Limine | Apr. 25, 2025 | Sept. 12, 2025 |
| Hearing on MSJ and evidentiary motions | May 7, 2025 | Sept. 22, 2025 |
| Parties Jointly File Proposed Jury Instructions, Verdict Forms, Voir Dire Questions | May 23, 2025 | Oct. 6, 2025 |
| Final pretrial conference | May 30, 2025 | Oct. 20, 2025 |
| Beginning of Trial | June 2, 2025 | Oct. 27, 2025 |