USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/03/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FUBOTV INC. and FUBOTV MEDIA INC.,

                            *Plaintiffs*,

  -against-

THE WALT DISNEY COMPANY, ESPN, INC., ESPN ENTERPRISES, INC., HULU, LLC, FOX CORPORATION, and WARNER BROS. DISCOVERY, INC.,

                            *Defendants*.

Civil Action No.  24-cv-1363-MMG-JW

[~~PROPOSED~~] STIPULATED ORDER RE:  DISCOVERY OF ELECTRONICALLY STORED INFORMATION

---

### [~~PROPOSED~~] STIPULATED ORDER RE:  DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The parties in the above captioned matter submit this Stipulated Order Re:  Discovery of Electronically Stored Information to govern discovery of electronically stored information in this action.  This Order will serve as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**A.**    **Definitions**

    1.    "**Requesting Party**" means and refers to the Party that serves a request for the production of Documents.

    2.    "**Producing Party**" means and refers to the Party upon whom a request for the production of Documents is served.

    3.    "**Document**" or "**Documents**" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the

record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

4. "**Document Family**" means a Document and all other Documents that are attached to it, the Document to which other Documents are attached being the "Parent", and Documents that are attached to the Parent being the "Children".

5. "**Custodian**" means the individual from whose files the Document originated, or in the case of a Document that originated from a document source not associated with the files of one particular individual, the source of that Document (*e.g.*, shared folder name).

6. "**Electronically Stored Information**" or "**ESI**," means any Document or Documents stored or transmitted in electronic form.

7. "**Email**" means electronic messages sent using electronic mail protocols (*e.g.*, SMTP).

8. "**Instant Message**" means a non-Email form of electronic messaging (*e.g.*, Slack, Cisco Jabber, Microsoft Teams, Google Chats), not including Text Messages.

9. "**Text Message**" means text-based telephonic or electronic messages exchanged between cellular devices (*e.g.*, iMessage, WhatsApp, Signal).

10. "**E-Document**" means a word processing, spreadsheet, presentation, image, or other file (other than Email, Text Messages, or Instant Messages) stored or transmitted in electronic form.

11. "**Hard-Copy Document**" means any Document existing in paper form at the time of collection.

12. "**Image Format**" means an image version of a Document that displays the content of that Document. Documents produced as TIFFs are produced in Image Format.

13. "**Native Format**" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xlsx file.

14. "**Metadata**" means structural information of a Document that contains data about a Document aside from the contents of the Document itself.

15. "**Optical Character Recognition**" or "**OCR**" means the process of recognizing and creating a file containing visible text from a Document.

16. "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

17. "**Confidentiality Designation**" means the confidentiality designation affixed to Documents as defined by, and subject to, the Amended Stipulated Protective Order dated July 8, 2024 (ECF No. 218) (the "Protective Order"), or any applicable agreement or stipulation, entered in this matter.

18. "**Searchable Text**" means the text extracted directly from a native Document or generated using OCR from any Document that allows the Document to be electronically searched.

19. "**Load Files**" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

20. "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to".

**B.     General**

1. The Parties will cooperate in good faith throughout the pendency of the e-discovery process.

2. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing. The Parties will meet and confer to resolve any dispute regarding the application of this Order before seeking Court intervention.

**C.     Not Readily Accessible Sources**

1. To reduce the costs and burdens of discovery, the parties represent that these data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). ESI from these sources will be preserved to the extent it is preserved in the normal course of business, but they need not be collected, searched, reviewed, or produced, except for good cause shown:

   a. backup systems used for disaster recovery purposes only or that are substantively duplicative of data that is more accessible elsewhere;

   b. systems, server, and network logs;

   c. systems no longer in use that cannot be accessed without undue effort;

   d. automatically saved interim versions of Documents;

   e. deleted, slack, fragmented, or other data accessible only by forensics;

   f. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

   g. on-line access data such as temporary internet files, history, cache, and cookies;

        h.      dynamic fields of databases or log files that are not retained in the usual course of business; and

        i.      voice messages.

2.      Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), except for good cause shown.

**D.**    **Search**

1.      The Parties agree that they will meet and confer about methods to search ESI as soon as practicable, given the expedited nature of this proceeding. *See* ECF No. 140 at 2; Individual Rule & Practice II(A)(6). The Parties recognize that a variety of search tools and methodologies, including but not limited to technology assisted review (TAR) tools, may be used to expedite review for this proceeding and should be considered and discussed by the parties.

**E.**    **Processing Specifications**

1.      <u>De-Duplication</u>. The Producing Party shall take reasonable steps to remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents, including Email header information, notes, and annotations. Documents within a Document Family shall be considered duplicative of other Documents only if all Documents within each Document's Document Family are duplicative. An Email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the Email is identical. Exact duplicates of Documents retrieved from different Custodians may be considered duplicative despite originating from a different Custodian. A Producing Party may use other reasonable methods to remove duplicate Documents from production provided that method is

5

disclosed to the Requesting Party.  The Parties shall timely meet and confer regarding any disputes over the de-duplication process.

The Producing Party shall provide a Metadata field "ALLCUSTODIANS" for all Documents, listing the Custodian of the Document and all Custodians that possessed or held any duplicate of the Document that was removed through de-duplication.  Such de-duplicated documents shall be deemed produced from the files of each such identified Custodian for all purposes in this litigation, including for use at deposition and trial.  A Producing Party shall use a uniform description of a particular Custodian across productions.  The Producing Party will timely update the "ALLCUSTODIANS" field through an overlay file as necessary to comply with this provision, including where a later processed Document de-duplicates against a previously produced Document.  The overlay file shall include all Custodians listed in the "ALLCUSTODIANS" field in prior productions and any Custodians newly identified in the current supplemental production.

2. <u>Email Threading</u>.  The Parties are permitted to use commercially reasonable Email threading tools to remove Emails and their attachments where the contents of an Email and its attachments are wholly included within another Email and its attachments that are not removed.  Upon request a Party will disclose the tool used for Email threading and reasonable information regarding its functioning.

3. <u>System Files/Application Executable Files</u>.  Each Party will use reasonable efforts to filter out common system files and application executable files.  Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST).  Additional culling of system files based on file extension may include, but are not limited to:  WINNT, LOGS, DRVS, C++

Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.  Parties need not produce Documents that are empty or not human-readable, except for good cause shown.

      4.      <u>Embedded Objects</u>.  A Producing Party shall, when reasonably feasible, produce non-image objects that are embedded in other documents ("Embedded Objects") (*e.g.*, a spreadsheet embedded within a word processing or presentation Document) as separate documents, which shall be treated as attachments to the Document from which it was extracted.  Embedded images (*e.g.*, logos, signature blocks) shall not be produced as separate Documents.

      5.      <u>Searchable Text</u>.  Searchable Text must be extracted directly from the native Document unless the Document requires redaction, is an image, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text shall be created using OCR.  Searchable Text shall include all comments, revisions, tracked changes, speaker's notes, and hidden text.  Searchable Text from Email shall include all header information that would be visible if the Email were viewed natively including:  (1) the individuals to whom the Email was directed, (2) the author of the Email, (3) any recipients copied or blind copied on such Email, (4) the subject line of the Email, (5) the date and time of the Email, and (6) the names of any attachments.  Searchable Text shall not contain the Bates number or Confidentiality Designation, to the extent reasonably feasible.

6. <u>Time and Date</u>.  When processing ESI, UTC should be selected as the time zone. If a Party has already processed ESI in another time zone that Party will provide a time zone field that will show the difference to UTC and confirm the original time zone selected.

7. <u>Exception Files</u>.  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or password protected files) ("Exception Files").  The Parties will meet and confer regarding requests for the production of the native versions of Exception Files and/or efforts to locate passwords for specifically identified Documents protected by passwords.  If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

8. <u>Hard-Copy Documents</u>.  Hard-Copy Documents are to be scanned and produced electronically in Image Format.  Reasonable efforts are to be employed to scan the pages of Hard-Copy Documents in the same order in which are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same Document as a single Document; and to treat Documents that clearly appear to be separate Documents as separate Documents.  For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  Original Document orientation (*i.e.*, portrait v. landscape) should be maintained.  Searchable Text shall be created using OCR.

F. **Production Format**

1. <u>General</u>.  Except as otherwise provided herein, the Parties will produce Documents in Image Format as single-page, black-and-white Group IV TIFFs at a resolution of at least 300 dots per inch (dpi).  Spreadsheets (*e.g.*, Excel, Google Sheets), delimited text files

(*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv) files), audio, and video files shall be produced in Native Format. Presentations (*e.g.*, PowerPoint, Keynotes, Google Slides) shall be produced in Image Format and Native Format. Redacted documents required to be produced in Native Format that are produced in Image Format pursuant to Section F.10 below shall be produced in color. A Requesting Party may request the production of other Documents in Native Format where the production of the native file is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

2. <u>Image Format</u>. Documents produced in Image Format will be named according to the corresponding Bates numbered images. All Documents that contain comments, deletions, and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image. Each Image Format Document will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size. The Bates number and Confidentiality Designation must not obscure any part of the underlying image. If placement of either the Bates number or Confidentiality Designation will result in obscuring the underlying image, the Bates number or Confidentiality Designation should be placed as near to its specified position as possible while preserving the underlying image.

3. <u>Color</u>. Images may be produced in black & white, except that Presentations shall be produced in color, and the Requesting Party may request color images of other Documents where color is reasonably necessary to their comprehension or use, and such request shall not

unreasonably be denied. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high-quality setting so as to not degrade the original image.

    4.    <u>Native Format</u>. For Documents produced in Native Format, except for Presentations, a Bates-stamped placeholder in Image Format bearing the legend "This Document has been produced in Native Format" shall also be produced in the same way as any other Image Format Document. Native files shall have a filename that includes the Bates number and Confidentiality Designation. Any Party downloading, saving, printing, or distributing the native file for use in this matter shall append and use the placeholder as a cover sheet to the native file at all times.

    5.    <u>Load Files</u>. For each document, the Producing Party will provide (1) a delimited text file (DAT) that will include, where the Metadata is reasonably available, the Metadata listed in the Table of Metadata Fields, attached as Exhibit A, and (2) an image load file (OPT) for TIFF/JPG images, including document breaks and page counts. The DAT file should be in Unicode (UTF8) format.

    6.    <u>Metadata</u>.

    The Metadata DAT file shall be delimited according to the following characters:

    Delimiter = ¶ (ASCII:020)

    Text-Qualifier = þ (ASCII:254)

    New Line = ® (ASCII:174)

    Multi-value delimiter = ; (ASCII Code 059)

    Nested Value = \ (ASCII:092)

    7.    <u>Text Files</u>. A single text file containing the Searchable Text as described in Section F.7, *supra*, shall be provided for each Document. The text filename shall be the same as

the Bates number of the first page of the Document with the Document extension ".txt" suffixed. Filenames shall not have any special characters or embedded spaces.

8. <u>Instant Messages and Text Messages</u>.  To the extent Instant Messages and Text Messages are produced, a Party shall produce such messages such that individual messages are grouped into threads (*i.e.*, continuous conversations between one or more individuals) of 24 hours.  A Requesting Party may request the production of additional Instant Messages or Text Messages beyond the 24-hour period if reasonably necessary to understand the context of a conversation, and such request shall not unreasonably be denied.

9. <u>Databases, Structured, Aggregated, or Application Data</u>.  For requests in which responsive information is contained in a database (*e.g.*, Microsoft Access) or other structured or aggregated data source or otherwise maintained by an application, a Party may produce relevant information by generating one or more reports used in the ordinary course of business.  If the Requesting Party believes that the generation of ordinary course reports is not adequate, the Parties agree to meet and confer to discuss alternative forms of production.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

10. <u>Redactions</u>.  The Parties may redact information that is (1) privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) sensitive personally identifiable information (*e.g.*, credit card numbers, account passwords, SSNs); or (3) non-responsive, commercially sensitive information on a slide of a PowerPoint presentation if and only if no part of the relevant slide contains responsive material.  Redacted documents required to be produced in Native Format may be produced in Image Format and searchable OCR text.  Otherwise, such Documents shall be redacted in Native Format, or the Parties shall meet and confer on a reasonable method of redaction.  Redacted documents will be

produced with the associated metadata for the document, to the extent possible without compromising the privileged or protected information. Redacted Documents shall be identified as such in the Metadata field "Redacted". The Metadata data shall also indicate the basis or bases for the redaction/s (*e.g.*, "Privileged", "Privacy") in the Metadata field "Redacted Reason" and shall indicate whether a common interest claim applies in the Metadata field "Common Interest". For particular Redacted Documents, a Requesting Party may request confirmation of the "Privileged" basis or bases, including whether it is "Attorney-Client Privilege" and/or "Attorney Work Product", and such request shall not unreasonably be denied. Email header information (*e.g.*, date, subject line, etc.) should not be redacted unless it is independently privileged. Attachments to produced Emails or other Documents whose entire contents can be redacted may be produced as single-page slip-sheets stating that the attachment has been redacted in full. Slip sheets shall be in the same position in the Document Family as if the withheld Documents had been produced.

      11.      <u>Document Families</u>. Non-responsive attachments to responsive parent emails, Text Messages, and Instant Messages need not be produced. A Bates numbered placeholder will be provided for any document withheld pursuant to this Section and shall state that a non-responsive attachment has been withheld from production. For all attachments withheld as non-responsive, the Producing Party agrees to produce the metadata set forth in Exhibit A. Parent-Children relationships within a Document Family shall be preserved through the production of an appropriate Metadata field.

      12.      <u>Foreign Language Documents</u>. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes

prior to filing of the lawsuit, the Producing Party shall produce both the original Document and all English-language versions. Nothing in this Order shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

13. Re-productions. Notwithstanding any provisions to the contrary, Documents that the Producing Party re-produces in whole or in part from the production files of another litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the other matter, provided that a party will re-produce documents in a different format for good cause shown.

14. Replacement Productions. Any replacement production will be transmitted with a cover letter or Email to identify the production as a replacement and cross-reference the BegDoc and EndDoc of the Documents being replaced. Replacement productions shall include load files necessary to link the replacement file to other previously produced document family members. Where the replacement Document image occupies more pages than the original Document image, the Producing Party shall apply an appropriate numerical suffix to the Bates number of the replacement images (*e.g.*, ABC000123.001 to ABC000123.005). If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production".

15. Production Media. The Producing Party will provide the production data via SFTP site, electronic media (external USB hard drive or thumb drive), or by way of other electronic transfer, as between accounts at a cloud provider (subject to prior agreement with the Requesting Party) (collectively, "Production Media"), to arrive no later than the day any production is due. When production is via SFTP site, a single compression file should not

exceed five (5) gigabytes in size. If a production includes a set of compression files, the total size should not exceed one (1) terabyte. For any production over one (1) terabyte in size, the Producing Party will provide the production data on electronic media, to arrive no later than the day any production is due. The Producing Party shall encrypt the production data, and the Producing Party shall forward the password to decrypt the production data separately from the SFTP site or electronic media to which the production data is saved. Prior to a Producing Party's initial production, the Producing Party shall seek from the Requesting Party the relevant contact information of the individuals to receive the Production Media and passwords. Each piece of Production Media shall identify: (1) the Producing Party's name; (2) a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"); (3) the production date; and (4) the Bates Number range of the materials contained on the Production Media.

**G.    Privilege Log**

1. The Producing Party shall provide the Requesting Party with a privilege log within 45 days after the substantial completion of document production. The Parties will meet and confer as soon as practicable regarding the requirements of the privilege log.

**H.    Non-Party Documents**

1. A Party that issues a subpoena ("Issuing Party") upon any non-party shall include a copy of this Order and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein, to the extent reasonably feasible.

2. If the Issuing Party receives any Documents in response to a non-party subpoena, the Issuing Party shall produce promptly to all other Parties a copy of the Documents in the form

in which they were received and subject to all the procedures and protections set forth in any applicable protective order or confidentiality stipulation.

**I.       Limitation, Non-Waiver and Modification.**

1. This Order applies to Documents produced on or after the date this Stipulated Order is fully executed by the Parties.

2. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including Metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

3. The Parties do not waive (1) any privileges or (2) any objections to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

4. This Order may be modified by a further Stipulated Order of the Parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order Re:  Discovery of Electronically Stored Information", and each modified Stipulated Order will supersede the previous Stipulated Order.

**SO STIPULATED AND AGREED.**

Dated: January 2, 2025

| | |
|---|---|
| /s/ Thomas G. Schultz | /s/ Antony L. Ryan |
| Mark C. Hansen (admitted *pro hac vice*) | Antony L. Ryan |
| Evan T. Leo (admitted *pro hac vice*) | Joe Wesley Earnhardt |
| Kevin J. Miller (admitted *pro hac vice*) | Yonatan Even |
| Joseph S. Hall (SDNY Bar No. JH2612) | Damaris Hernandez |
| Thomas G. Schultz (admitted *pro hac vice*) | Michael P. Addis |
| KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C. | CRAVATH, SWAINE & MOORE LLP |
| 1615 M Street, NW | 825 Eighth Avenue |
| Suite 400 | New York, NY 10019 |
| Washington, DC 20036 | Tel.: (212) 474-1000 |
| Tel.: (202) 326-7900 | Fax: (212) 474-3700 |
| Fax: (202) 326-7999 | Email: aryan@cravath.com |
| Email: mhansen@kellogghansen.com | wearnhardt@cravath.com |
| eleo@kellogghansen.com | yeven@cravath.com |
| kmiller@kellogghansen.com | dhernandez@cravath.com |
| jhall@kellogghansen.com | maddis@cravath.com |
| tschultz@kellogghansen.com | |

*Counsel for Plaintiffs fuboTV Inc. and fuboTV Media Inc.*

*Counsel for Defendants The Walt Disney Company, ESPN, Inc., ESPN Enterprises, Inc., and Hulu, LLC*

| | |
|---|---|
| /s/ Andrew J. Levander | /s/ David L. Yohai |
| Andrew J. Levander | David L. Yohai |
| DECHERT, LLP | Adam C. Hemlock |
| 1095 Avenue of the Americas | Elaina K. Aquila |
| New York, NY 10036 | Robert W. Taylor |
| Tel.: (212) 698-3500 | Theodore E. Tseskerides |
| Fax: (212) 698-3500 | WEIL, GOTSHAL & MANGES LLP |
| Email: andrew.levander@dechert.com | 767 Fifth Avenue |
| | New York, NY 10153 |
| Steven Bizar | Tel.: (212) 310-8000 |
| DECHERT, LLP | Fax: (212) 310-8007 |
| 2929 Arch Street | Email: david.yohai@weil.com |
| Cira Center | adam.hemlock@weil.com |
| Philadelphia, PA 19104 | elaina.aquila@weil.com |
| Tel.: (215) 994-2205 | robert.taylor@weil.com |
| Email: steven.bizar@dechert.com | theodore.tsekerides@weil.com |

| | |
|---|---|
| Steven A. Engel<br>Erica Fruiterman<br>DECHERT, LLP<br>1341 27th Street, NW<br>Washington, DC 20007<br>Tel.: (202) 261-3403<br>Fax: (202) 261-3143<br>Email: steven.engel@dechert.com<br>       erica.fruiterman@dechert.com | *Counsel for Warner Bros. Discovery, Inc.* |

*Counsel for Defendant Fox Corporation*

**SO ORDERED.**

**Date:** January 3, 2025
      **New York, New York**

                    **MARGARET M. GARNETT**
                    **United States District Judge**

**Exhibit A Table of Metadata Fields**

| Field | Definition | Doc Type |
|---|---|---|
| BEGBATES | Beginning Bates number (production number) | All |
| ENDBATES | Ending Bates number (production number) | All |
| BEGATTACH | First Bates number of the first Document in the Document Family | All |
| ENDATTACH | Last Bates number of the last Document in the Document Family | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for the Searchable Text file | All |
| PARENT DATE | Date of the Parent Document (mm/dd/yyyy hh:mm:ss AM/PM) | All |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALLCUSTODIANS | The Custodian of the Document as well as for all copies of the Document that were removed as a result of de-duplication | All |
| FOLDER | Folder location of the Email within the Native Email application | Email |
| FILEPATH | Original file path of the location where the item was located at the time of collection | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Additional Recipients | Email |
| BCC | Blind Additional Recipients | Email |
| EMAIL SUBJECT | Subject line of Email | Email |
| EMAIL DATE | Date Sent (mm/dd/yyyy hh:mm:ss AM/PM) or Date Received (mm/dd/yyyy hh:mm:ss AM/PM) | Email |

| Field | Definition | Doc Type |
|---|---|---|
| EMAIL TYPE | Type of Email item (*e.g.*, Email, calendar item, contact, note, task) | Email |
| CONVERSATION ID | Identifier indicating the Email thread to which an Email belongs | Email |
| FILENAME | Original filename at the point of collection | E-Document |
| FILESIZE | Size of the file | E-Document |
| TITLE | Title of document or title field extracted from Metadata of non-Email ESI | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM/PM) | E-Document |
| LAST MODIFIED DATE | Last Modified Date (mm/dd/yyyy hh:mm:ss AM/PM) | E-Document |
| FILEEXTENSION | Original file extension at the point of collection / e-Documents | E-Document |
| INSTANT MESSAGE TYPE | The type of electronic message (*e.g.*, Slack, Cisco Jabber, Microsoft Teams, Google Chats.) | Instant Messages |
| INSTANT MESSAGE PARTICIPANTS | Senders, recipients, subscribers, or others who have the ability to participate in a group message or channel | Instant Messages |
| INSTANT MESSAGE SUBJECT | Subject or name of the messaging thread or topic, if any | Instant Messages |
| INSTANT MESSAGE CHANNEL | Name of persistent messaging group or chat room, if any | Instant Messages |
| INSTANT MESSAGE DATE | Date of last instant message in thread | Instant Messages |
| TEXT MESSAGE PARTICIPANTS | Senders, recipients, subscribers, or others who have the ability to participate in a group message | Text Messages |
| TEXT MESSAGE DATE | Date of last text message in thread | Text Messages |
| DOCUMENT TYPE | Descriptor for the type of Document, including: "**Email**" for all Emails; "**Instant Message**" for all Instant Messages; "**Text Message**" for all Text Messages; "**Attachment**" for files that were attachments to Emails or Instant Messages; | All |

| Field | Definition | Doc Type |
|---|---|---|
|  | "**Electronic File**" for electronic files not attached to Emails or Instant Messages; and "**Hard Copy**" for Hard-Copy Documents |  |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents | All |
| REDACTED REASON | Reason for redaction: "Privileged" or "Privacy" | All |
| COMMON INTEREST | "Yes" for Documents where a common interest claim applies; "No" for Documents where no common interest claim applies | All |
| PRODVOL | Production volume of data | All |
| CONFIDENTIALITY | Confidentiality Designation if assigned pursuant to any applicable Protective Order or stipulation | All |
| TIMEZONE | Time zone used during processing of data | All |
| SOURCE | The producing party | All |
| ATTACHIDS | The IDs of the documents that are attached to the produced document | All |
| PARENT ID | Indicates the parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments (including attachments that are Emails) but should not be set for parents. | All |
| MESSAGE ID | The message ID of an Email or other type of electronic message | Email, Instant Message |

3